IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LANCE NISHIHARA., Individually and on Behalf of All Others Similarly Situated, | ) ) ) | Civil Action No. |
| Plaintiff, | ) ) ) | |
| vs. | ) ) ) | |
| ATLAS ENERGY, INC., EDWARD E. COHEN, JONATHAN Z. COHEN, RICHARD D. WEBER,  CARLTON M. ARRENDELL, DONALD W. DELSON, DENNIS A. HOLTZ, HARMON S. SPOLAN, MARK C. BIDERMAN, GAYLE P.W. JACKSON, JESSICA K. DAVIS, ELLEN F. WARREN, BRUCE M. WOLF, CHEVRON CORPORATION, and ARKHAN CORPORATION, | ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) ) | *Electronically Filed* |

**CLASS ACTION COMPLAINT**

Plaintiff, Lance Nishihara, individually and on behalf of all others similarly situated, by his attorneys, alleges the following based upon the investigation of his counsel, except as to allegations specifically pertaining to plaintiff and his counsel, which are based on personal knowledge.

**SUMMARY OF THE ACTION**

1.      This is a class action brought by a shareholder of defendant Atlas Energy, Inc. ("Atlas Energy" or the "Company") on behalf of the public shareholders of Atlas Energy.  The action is brought against the Company and members of the Company's Board of Directors (the "Board" or the "Individual Defendants"), arising out of their breaches of fiduciary duty in connection with the proposed acquisition of the Company by Chevron Corporation ("Chevron").  This action seeks equitable relief only.

2.      Atlas Energy, formerly Atlas America, Inc., has been engaged in the energy industry since 1968, and is one of the largest independent natural gas producers in the Appalachian and

- 1 -

Michigan Basins.  The Company is also one of the largest producers in the New Albany Shale in Indiana, the Antrim Shale in Michigan and the Chattanooga Shale in Tennessee.  Atlas Energy is the country's leading sponsor and manager of tax-advantaged energy investment partnerships that finance the exploration and development of natural gas.  Over the last five years, Atlas Energy has raised in excess of $1.5 billion through its drilling programs.  Additionally, Atlas Energy manages a midstream energy service provider engaged in the transportation, gathering, and processing of natural gas in the Mid-Continent and Appalachia regions of the United States through its subsidiary Atlas Pipeline Holdings, L.P. ("Atlas Holdings" or "AHD"), owner of the general partner of Atlas Pipeline Partners, L.P. ("APL").  Atlas Energy owns 1.1 million common units and 8,000 preferred units in APL and a 64% controlling interest in Atlas Holding.  The Company also holds an interest in Lightfoot Capital Partners LP ("Lightfoot LP") and Lightfoot Capital Partners GP, LLC ("Lightfoot GP"), the general partner of Lightfoot, entities which incubate new master limited partnerships ("MLPs") and invest in existing MLPs.

3.     The Company's crown jewel, however, is its access to natural gas located in the Marcellus Shale.  The Marcellus Shale stretches from Pennsylvania to New York, Ohio, West Virginia.  Its close proximity to the east coast has enabled gas from the Marcellus Shale to sell at a premium, averaging 11 percent more than the benchmark price over the past year.  In its announcement of the Proposed Acquisition, Chevron has admitted that Atlas Energy has "***an attractive natural gas resource position . . . [and] 'one of the premier acreage positions***'" in Pennsylvania's "prolific" Marcellus Shale, a "'***high quality resource***'" with a "'***competitive cost structure***'" and "'***strong growth potential***.'"  If the Proposed Acquisition closes, Chevron will acquire "Atlas Energy's estimated ***nine trillion cubic feet of natural gas*** resource, which includes approximately 850 billion cubic feet of proved natural gas reserves with approximately 80 million

cubic feet of daily natural gas production."  As of December 31, 2009, Atlas Energy had successfully drilled approximately 200 Marcellus shale wells.

4.       On November 9, 2010, the Company announced that it had entered into a Definitive Agreement to be acquired by Chevron (the "Proposed Acquisition").  In the Proposed Acquisition, Atlas Energy shareholders will receive $38.25 in cash for each outstanding share, and will also receive a pro-rata share of a distribution of over 41 million units of AHD.  Based on AHD's most recent closing price on November 8, 2010, these units have a value of $5.09 per Atlas Energy share.

5.       The Proposed Acquisition requires that prior to the Proposed Acquisition, Atlas Energy: (i) sell approximately 175 Bcfe of natural gas reserves, certain other energy assets and fee revenues from the investment management business owned by Atlas Energy, for consideration payable to Atlas Energy of $250 million, comprised of $220 million in newly issued AHD units and $30 million in cash; and (ii) acquire APL's 49% interest in Laurel Mountain Midstream, LLC for $403 million in cash payable to APL.  Thus, the consideration Chevron is paying for Atlas Energy is only $38.25 per share, because Chevron is not paying Atlas Energy shareholders the AHD units, rather those units will be distributed from the units Atlas Energy is acquiring prior to the Proposed Acquisition.

6.       The Proposed Acquisition values the Marcellus Shale at approximately $9,000 an acre.  Earlier this year, however, Atlas announced a $1.7 billion joint venture with Reliance Industries Ltd. ("Reliance").  Under the terms of the deal, Reliance acquired a 40% interest in the Company's operations in the Marcellus Shale for over $14,000 an acre, nearly 50% more than what Chevron is currently paying.  This low price per acre led analyst Scott Hanold from RBC Capital

markets to state his belief that there could be other potential acquirers that would be willing to pay more for Atlas Energy.[1]

7.    Chevron is attempting to take advantage of the current lull in natural gas prices to acquire a major presence in the Marcellus Shale.  Natural gas is currently trading at an eight-year low due to strong U.S. gas production.  Though prices are currently low, Atlas is well-positioned with is presence in the Marcellus Shale to easily not only survive, but thrive through this low point. In fact, on November 9, 2010, the same day but just after the announcement of the Proposed Acquisition, Atlas Energy reported third quarter 2010 (ended September 30, 2010) earnings per share of $.20, *more than three times* analysts' consensus estimates of  $0.06.  Revenue for the quarter came in at $371.08 million, almost *$300 million more* than the consensus of $76.80 million.

8.    On October 13, 2010, Atlas Energy reported "*[r]ecord* [t]hird [q]uarter 2010 [p]roduction."  Specifically, the Company report the average net production in Atlas Energy's Appalachian business unit "reached a record 63.3 million cubic feet of natural gas equivalents ('Mmcfe') per day in the third quarter 2010, representing a 53.2% increase year over year and a 15.4% increase from the second quarter 2010.  Total Company average net production reached 118.3 Mmcfe per day in the third quarter 2010, up 18.4% over the prior year and 7.7% from the prior quarter.  This growth reflects increasingly strong results from the Company's development of its leading Marcellus Shale position in southwestern Pennsylvania."

9.    The Board of Directors ("Board") of the Company, however, has entered into agreements with Chevron that will serve to deter other bidders for Atlas Energy.  The members of the Board breached their fiduciary duties by agreeing to preclusive deal protection devices in

---

[1] According to Yahoo! Finance, nine analysts have assigned a mean target price of $45.33 per share for Atlas Energy common stock and at least one analyst has assigned a target price of $64.00 per share for Atlas Energy stock.

connection with the Agreement and Plan of Merger the Company entered into with Chevron and Arkhan dated November 8, 2010 (the "Merger Agreement"). These provisions, which collectively preclude any competing offers for the Company, include: (i) a no-solicitation provision prohibiting the Company from properly shopping the Company; (ii) a "matching rights" provision which allows Chevron to match any superior bid for the Company; and (iii) a non-mutual termination fee payable by the Company to Chevron for $97 million if the Proposed Acquisition is terminated in connection with a competing acquisition proposal.

10. In pursuing the unlawful plan to sell Atlas Energy pursuant to a defective sales process, the Individual Defendants have breached their fiduciary duties of loyalty, due care, independence, candor, good faith, and fair dealing. Plaintiff seeks to enjoin the Proposed Acquisition.

**JURISDICTION AND VENUE**

11. Jurisdiction is conferred by 28 U.S.C. §1332. Complete diversity among the parties exists and the amount in controversy exceeds $75,000, exclusive of interest and costs.

12. This Court has jurisdiction over each defendant named herein because each defendant is either a corporation that conducts business in and maintains operations in this District, or is an individual who has sufficient minimum contacts with this District to render the exercise of jurisdiction by the District courts permissible under traditional notions of fair play and substantial justice.

13. Venue is proper in this Court in accordance with 28 U.S.C. §1391(a) because: (i) Atlas Energy maintains its principal place of business in this District; (ii) one or more of the defendants either resides in or maintains executive offices in this District; (iii) a substantial portion of the transactions and wrongs complained of herein, including the defendants' primary participation in the wrongful acts detailed herein, and aiding and abetting and conspiracy in violation of fiduciary

duties owed to Atlas Energy, occurred in this District; and (iv) defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

## PARTIES

14.    Plaintiff Lance Nishihara is, and at all times relevant hereto was, an Atlas Energy shareholder.  Plaintiff Nishihara is a citizen of California.

15.    Atlas Energy is a Delaware corporation and the country's largest sponsor and manager of tax-advantaged energy investment partnerships.  Additionally, Atlas Energy is one of the largest independent natural gas producers in the Appalachian and Michigan Basins and a leading producer in the Marcellus Shale in Pennsylvania.  Atlas Energy owns 1.1 million common units and 8,000 preferred units in APL and a 64% controlling interest in AHD.  Upon completion of the Proposed Acquisition, Atlas Energy will become a wholly–owned subsidiary of Chevron.  Atlas Energy's principal executive offices are located at Westpointe Corporate Center One, 1550 Coraopolis Heights Road, Moon Township, Pennsylvania.

16.    Defendant Edward E. Cohen ("E. Cohen") is Atlas Energy's Chairman of the Board and Chief Executive Officer and has been since September 2000.  E. Cohen was also Atlas Energy's President from September 2000 to October 2009.  In connection with the Proposed Acquisition, E. Cohen entered into a Voting Agreement with Chevron, pursuant to which he agreed to vote his shares in favor of the Proposed Acquisition and against any alternative transactions.  Defendant E. Cohen is a citizen of Florida.

17.    Defendant Richard D. Weber ("Weber") is Atlas Energy's President and has been since October 2009.  Weber is also President, Chief Operating Officer, and a director of Atlas Energy Resources and Atlas Energy Management and has been since June 2006.  In connection with the Proposed Acquisition, Weber entered into a third amendment to his employment agreement with

Atlas Energy, pursuant to which Weber will provide employment and consulting services to Atlas Energy for one year following the closing of the Proposed Acquisition in exchange for compensation worth $2 million.  Defendant Weber is a citizen of Pennsylvania.

18.    Defendant Jonathan Z. Cohen ("J. Cohen") is Atlas Energy's Vice Chairman of the Board and has been since September 2000.  In connection with the Proposed Acquisition, J. Cohen entered into a Voting Agreement with Chevron, pursuant to which he agreed to vote his shares in favor of the Proposed Acquisition and against any alternative transactions.  Defendant J. Cohen is a citizen of New York.

19.    Defendant Carlton M. Arrendell ("Arrendell") is an Atlas Energy director and has been since February 2004.  Defendant Arrendell is a citizen of Virginia.

20.    Defendant Donald W. Delson ("Delson") is an Atlas Energy director and has been since February 2004.  Defendant Delson is a citizen of Pennsylvania.

21.    Defendant Dennis A. Holtz ("Holtz") is an Atlas Energy director and has been since February 2004.  Defendant Holtz is a citizen of New Jersey.

22.    Defendant Harmon S. Spolan ("Spolan") is an Atlas Energy director and has been since August 2006.  Defendant Spolan is a citizen of Pennsylvania.

23.    Defendant Mark C. Biderman ("Biderman") is an Atlas Energy director and has been since July 2009.  Defendant Davis is a citizen of New York.

24.    Defendant Gayle P.W. Jackson ("Jackson") is an Atlas Energy director and has been since July 2009.  Defendant Jackson is a citizen of Missouri.

25.    Defendant Jessica K. Davis ("Davis") is an Atlas Energy director and has been since September 2009.  Defendant Jackson is a citizen of Pennsylvania.

26.    Defendant Ellen F. Warren ("Warren") is an Atlas Energy director and has been since September 2009.  Defendant Warren is a citizen of Pennsylvania.

27.     Defendant Bruce M. Wolf ("Wolf") is an Atlas Energy director and has been since September 2009. Wolf was also Atlas Energy's Senior Vice President from October 1998 to May 1999. Defendant Wolf is a citizen of Florida.

28.     Defendant Chevron is a Delaware corporation and an integrated energy company with operations worldwide. Chevron provides administrative, financial, management, and technology support to U.S. and international subsidiaries that engage in fully integrated petroleum operations, chemicals operations, mining operations, power generation, and energy services. Chevron's principal executive offices are located at 6001 Bollinger Canyon Road, San Ramon, California.

29.     Defendant Arkhan Corporation is a Delaware corporation and an indirect wholly–owned subsidiary of Chevron. Upon completion of the Proposed Acquisition, Arkhan will merge with and into Atlas Energy and will cease its separate corporate existence.

30.     The defendants named in ¶¶16-27 are collectively referred to herein as the "Individual Defendants."

### FIDUCIARY DUTIES OF THE INDIVIDUAL DEFENDANTS

31.     By reason of the Individual Defendants' positions with the Company as officers or directors, said individuals are in a fiduciary relationship with the Company and its shareholders, and owe the Company and its shareholders a duty of highest good faith, fair dealing, loyalty, and full, candid, and adequate disclosure.

32.     Under Delaware law, in any situation where the directors of a publicly traded corporation undertake a transaction that will result in either (i) a change in corporate control, or (ii) a breakup of the corporation's assets, the directors have an affirmative fiduciary obligation to obtain the highest value reasonably available for the corporation's shareholders, and if such transaction will result in a change of corporate control, the shareholders are entitled to receive a significant premium.

To diligently comply with their fiduciary duties, the directors or officers may not take any action that:

(a)     adversely affects the value provided to the corporation's shareholders;

(b)     will discourage or inhibit alternative offers to purchase control of the corporation or its assets;

(c)     contractually prohibits them from complying with or carrying out their fiduciary duties;

(d)     will otherwise adversely affect their duty to search and secure the best value reasonably available under the circumstances for the corporation's shareholders; or

(e)     will provide the directors with preferential treatment at the expense of, or separate from, the public shareholders.

33.     In accordance with their duties of loyalty and good faith, and in connection with negotiating and agreeing to the Proposed Acquisition, the Individual Defendants, as directors or officers of Atlas Energy, are obligated to refrain from:

(a)     participating in or permitting any transaction where the directors' or officers' loyalties are divided;

(b)     participating in any transaction where the directors or officers receive or are entitled to receive a personal financial benefit not equally shared by the public shareholders of the corporation;

(c)     unjustly enriching themselves at the expense or to the detriment of the public shareholders; or permitting other officers or directors to do so; and/or

(d)     structuring a sales process for the Company to favor directors, officers, and/or other Company insiders for reasons unrelated to the directors' duty to seek the best price available for the Company's shareholders;

(e)     engaging in any conduct in the context of a sales process for the Company that favors one bidder for the Company over another in derogation of the directors' duty to seek the best price available for the Company's shareholders; and

(f)     failing to disclose and/or misrepresenting material information about the Company, the sales process for the Company, and the Company's financial prospects going forward when seeking shareholder support of a merger transaction.

Plaintiff alleges herein that the Individual Defendants, separately and together, in connection with the Proposed Acquisition, are knowingly or recklessly violating their fiduciary duties, including their duties of loyalty, good faith, and independence owed to the Company.  The Individual Defendants stand on both sides of the transaction, are engaging in self-dealing and abusing their control of Atlas Energy, and are obtaining for themselves personal benefits, including personal financial benefits, to the detriment of the Company.

## FACTUAL ALLEGATIONS

34.     On November 9, 2010, the Company announced that it had entered into a Definitive Agreement to be acquired by Chevron.  In the Proposed Acquisition, Atlas Energy shareholders will receive $38.25 in cash for each outstanding share, and will also receive a pro-rata share of a distribution of over 41 million units of AHD. Based on AHD's most recent closing price on November 8, 2010, these units have a value of $5.09 per Atlas Energy share.

35.     The Company announced the Proposed Acquisition in a press release which stated the following, in relevant part:

> Atlas Energy, Inc. ("Atlas Energy" or "ATLS") announced today that it has entered into a definitive agreement to be acquired by Chevron Corporation ("Chevron") in a transaction valuing Atlas Energy at $4.3 billion, including Atlas Energy's currently outstanding debt. In the transaction, Atlas Energy shareholders will receive consideration valued at $43.34 per share in total, a 37% premium to Atlas Energy's closing share price on November 8. Atlas Energy shareholders will receive $38.25 in cash for each outstanding share, and will also receive a pro-rata share of a distribution of over 41 million units of Atlas Pipeline Holdings, L.P. ("Atlas

Holdings" or "AHD"). Based on AHD's most recent closing price on November 8, these units have a value of $5.09 per Atlas Energy share. Closing of the transaction is subject to approval by Atlas Energy's shareholders, other customary closing conditions and the completion of the following transactions:

- Atlas Energy and AHD have agreed that, prior to the Chevron - Atlas Energy merger and the distribution of AHD units to the Atlas Energy stockholders, AHD will acquire from Atlas Energy approximately 175 Bcfe of natural gas reserves, certain other energy assets and fee revenues from the investment management business owned by Atlas Energy, for consideration payable to Atlas Energy of $250 million, comprised of $220 million in newly issued AHD units and $30 million in cash. Following the issuance of these AHD units to Atlas Energy, Atlas Energy will own approximately 41 million units of AHD, or approximately 81% of the outstanding units of AHD, all of which will be distributed to Atlas Energy shareholders as part of the transactions. AHD will also acquire the general partner interest in AHD so that, following the AHD distribution, AHD will cease to be controlled by Atlas Energy.

- Atlas Energy and Atlas Pipeline Partners, L.P. ("Atlas Pipeline" or "APL") have agreed that, prior to the Chevron - Atlas Energy merger, Atlas Energy will acquire APL's 49% interest in Laurel Mountain Midstream, LLC for $403 million in cash payable to APL.

Completion of each of the AHD transaction, the APL transaction and Atlas Energy's sale to Chevron is cross-conditioned on completion of the others.

Edward E. Cohen, Chairman and CEO of Atlas Energy, observed, "All of our shareholders should benefit from this sale and upon its completion, Atlas will have achieved a return of well over 800% since its initial public offering less than 6 1/2 years ago. All of our employees and shareholders should know that, through Chevron's acquisition of Atlas Energy, we will be bringing into the Marcellus Shale one of the world's largest corporations, an energy company second to none in its skills and dedication to excellence. This augurs well for customers and suppliers, our joint venture partners, those of our employees who will be continuing with Chevron, the local communities in which we have been active – and our nation, for all of whom Chevron's involvement in development of this resource will be of enormous benefit."

Jefferies & Company, Inc. is acting as lead financial advisor, and Deutsche Bank Securities, Inc. is serving as co-financial advisor, to Atlas Energy. Wachtell, Lipton, Rosen & Katz is legal advisor to Atlas Energy. Goldman, Sachs & Co. is serving as financial advisor to Chevron, and Skadden Arps Slate Meagher Flom LLP is acting as legal advisor to Chevron.

Atlas Energy, Inc. is one of the largest independent natural gas producers in the Appalachian and Michigan Basins and a leading producer in the Marcellus Shale in Pennsylvania. Atlas Energy, Inc. is also the country's largest sponsor and manager of tax-advantaged energy investment partnerships. Atlas Energy also owns 1.1 million common units and 8,000 preferred units in Atlas Pipeline Partners, L.P. and a

64% controlling interest in Atlas Pipeline Holdings. For more information, please visit our website at www.atlasenergy.com, or contact Investor Relations at InvestorRelations@atlasenergy.com.

Atlas Pipeline Partners, L.P. is active in the gathering and processing segments of the midstream natural gas industry. In the Mid-Continent region of Oklahoma, southern Kansas, and northern and western Texas, APL owns and operates five active gas processing plants as well as approximately 8,300 miles of active intrastate gas gathering pipeline. In Appalachia, APL is a 49% joint venture partner with Williams in Laurel Mountain Midstream, LLC, which manages a natural gas gathering system focused on the Marcellus Shale in southwestern Pennsylvania. For more information, visit the Partnership's website at www.atlaspipelinepartners.com or contact IR@atlaspipeline.com.

Atlas Pipeline Holdings, L.P. is a limited partnership which owns and operates the general partner of Atlas Pipeline Partners, L.P., through which it owns a 1.9% general partner interest, all the incentive distribution rights and approximately 5.8 million common limited partner units of Atlas Pipeline Partners, L.P.

Chevron Corporation is one of the world's leading integrated energy companies, with subsidiaries that conduct business worldwide. Chevron is based in San Ramon, Calif. More information about Chevron is available at http://www.chevron.com.

36.     Chevron announced the Proposed Acquisition in a press release which stated the following, in relevant part:

Chevron Corporation and Atlas Energy, Inc. announced today that Chevron would acquire Atlas Energy for cash of $3.2 billion and assumed pro forma net debt of approximately $1.1 billion. The acquisition will provide Chevron with an attractive natural gas resource position primarily located in southwestern Pennsylvania's Marcellus Shale. The acquisition is subject to certain Atlas Energy restructuring transactions, approval by Atlas Energy shareholders and regulatory clearance.

"This acquisition is the right opportunity for Chevron," said George L. Kirkland, Chevron Vice Chairman. "We are acquiring a company that has one of the premier acreage positions in the prolific Marcellus. The high quality resource, competitive cost structure in the Marcellus, strong growth potential of the asset base and its proximity to premier natural gas markets make this targeted acquisition a compelling investment for Chevron."

Kirkland also commented: "The Atlas Energy assets further advance Chevron's global shale gas position, complementing the company's recent entrance into shale gas opportunities in Poland, Romania and Canada."

Gary Luquette, Chevron North America Exploration and Production President said, "Atlas Energy brings to us a highly skilled team with strong operating experience and established land management capabilities. This knowledge, together

with Chevron's technical expertise and global experience with large scale project developments, will create strong organizational synergies."

**Atlas Energy Assets**

When the transaction closes, Chevron will gain Atlas Energy's estimated nine trillion cubic feet of natural gas resource, which includes approximately 850 billion cubic feet of proved natural gas reserves with approximately 80 million cubic feet of daily natural gas production.  The assets in the Appalachian basin consist of 486,000 net acres of Marcellus Shale; 623,000 net acres of Utica Shale; and a 49 percent interest in Laurel Mountain Midstream, LLC, a joint venture which owns over 1,000 miles of intrastate and natural gas gathering lines servicing the Marcellus. Assets in Michigan include Antrim producing assets and 100,000 net acres of Collingwood/Utica Shale.

**Marcellus Joint Venture**

In April 2010, Atlas Energy entered a joint venture to develop its Marcellus assets with a wholly owned affiliate of Reliance Industries Limited. Under the agreement, Chevron will assume Atlas Energy's role as operator with 60 percent participation in the Marcellus joint venture, under the original agreement terms between Atlas Energy and Reliance. Reliance will continue to fund 75 percent of the operator's drilling costs, up to $1.4 billion.

**Terms of Acquisition**

Under the terms of the agreement, Atlas Energy shareholders will receive $38.25 in cash for each share of Atlas Energy stock and a pro-rata distribution of over 41 million units of Atlas Pipeline Holdings, L.P. (NYSE: AHD) following certain restructuring transactions to be completed immediately prior to the merger closing. Based on AHD's most recent closing price on November 8, these units will have a value of $5.09 per Atlas Energy share.  In the restructuring transactions, Atlas Energy will:

- Acquire a 49 percent interest in Laurel Mountain Midstream, LLC from Atlas Pipeline Partners, L.P. for a cash consideration of $403 million;

- Sell all interests in existing investment partnerships, 175 billion cubic feet of proved natural gas reserves, and certain other energy assets to AHD for a consideration of $250 million, comprised of $30 million in cash and $220 million in newly issued AHD units.

Goldman, Sachs & Co. is acting as financial advisor to Chevron. Skadden Arps Slate Meagher Flom LLP is acting as legal advisor to Chevron. Jefferies & Company Inc. and Deutsche Bank Securities Inc. are acting as financial advisor to Atlas Energy. Wachtell Lipton Rosen Katz is acting as legal advisor to Atlas Energy.

Chevron will briefly address the acquisition at the upcoming Bank of America / Merrill Lynch 2010 Global Energy Conference on November 11th. The event will be webcast.

**About Chevron**

Chevron is one of the world's leading integrated energy companies, with subsidiaries that conduct business worldwide. The company's success is driven by the ingenuity and commitment of its employees and their application of the most innovative technologies in the world. Chevron is involved in virtually every facet of the energy industry. The company explores for, produces and transports crude oil and natural gas; refines, markets and distributes transportation fuels and other energy products; manufactures and sells petrochemical products; generates power and produces geothermal energy; provides energy efficiency solutions; and develops the energy resources of the future, including biofuels. Chevron is based in San Ramon, Calif. More information about Chevron is available at http://www.chevron.com.

**About Atlas Energy**

Atlas Energy, Inc. is one of the largest independent natural gas producers in the Appalachia and Michigan Basins and a leading developer in the Marcellus Shale in Pennsylvania.

37.    On November 12, 2010, the Company also filed a Form 8-K with the SEC wherein it disclosed the Merger Agreement.  In order to ensure no competing bidders emerge with a better offer for the Company's shareholders, the Individual Defendants have locked up the Proposed Acquisition through numerous draconian deal protection provisions agreed to as part of the Merger Agreement.

38.    The Merger Agreement contains a "no-solicitation provision," which prevents the Company from seeking a better offer for its shareholders.  According to Section 6.3(a) of the Merger Agreement, in pertinent part:

The Company shall not, nor shall it authorize or permit any of the Company Subsidiaries to, and it shall cause its and the Company Subsidiaries' respective Representatives not to, directly or indirectly (i) initiate, solicit or knowingly encourage (including by way of furnishing information or assistance), or knowingly induce, or take any other action designed to, or which would reasonably be expected to, result in the making, submission or announcement of, any proposal or offer that constitutes a Takeover Proposal, (ii) enter into any letter of intent, memorandum of understanding, merger agreement or other agreement, arrangement or understanding relating to any Takeover Proposal, (iii) other than informing Persons of the provisions contained in this Section 6.3, enter into, continue or otherwise participate in any discussions or negotiations regarding, furnish to any Person any information or data or access to its properties with respect to, or otherwise cooperate with or take

- 14 -

any other action to facilitate, (A) any Takeover Proposal or (B) or any proposal that by its terms requires the Company to abandon, terminate or fail to consummate the Merger or any other transactions contemplated by this Agreement or (iv) submit to the stockholders of the Company for their approval any Takeover Proposal, or agree or publicly announce an intention to take any of the foregoing actions

39.     While the Merger Agreement contains a "fiduciary out" clause that will allow the Board to talk to other potential acquirers, any potential benefit of this clause is illusory. Atlas Energy can only talk with and provide information to any third-party bidder if the Board determines that it has received a "Superior Proposal" from that bidder, something exceedingly unlikely since the Board and the Company cannot provide another suitor with non-public information prior to the receipt of a competing proposal. The receipt of a Superior Proposal is even more unlikely given that the Company must notify Chevron of the material terms of the third party's offer, and negotiate with Chevron in good faith over amendments to the Proposed Acquisition before accepting the third party's offer superior offer.

40.     The Merger Agreement also imposes on the Company and its shareholders a non-mutual termination fee of $97 million should Atlas Energy decide to pursue a competing acquisition.

41.     These draconian deal protection devices were designed to preclude any competing offers that could present better value for the Company's shareholders. Through the use of the no-solicitation provision, matching rights, termination fee, and Voting Agreements described herein, the Individual Defendants have effectively locked up the Proposed Acquisition at terms favorable to themselves and Chevron and detrimental to Atlas Energy's common shareholders.

**DEFENDANTS FAILED TO MAXIMIZE SHAREHOLDER VALUE**

42.     As a result of defendants' conduct, Atlas Energy's public stockholders have been and will continue to be denied the fair process and arm's-length negotiated terms to which they are entitled in a sale of their Company. In order to meet their fiduciary duties, the Individual Defendants are obligated to explore transactions that will maximize shareholder value, not structure a

- 15 -

preferential deal for themselves.  For the reasons detailed herein, the offer price does not reflect the true inherent value of the Company at the time the Proposed Acquisition was announced.

43.     The Company's recent financial results exhibit the value of Atlas Energy's market leadership position and growth prospects, particularly with regards to the value of the Marcellus Shale.

44.     The Company's recent results reflect the unfairness of the consideration in the Proposed Acquisition.  On October 13, 2010, Atlas Energy reported "*[r]ecord* [t]hird [q]uarter 2010 [p]roduction." Specifically, the Company reported the following in a press release which stated in relevant part:

**Atlas Energy Reports Record Third Quarter 2010 Production; New Marcellus Well Achieves Initial Rate of 21 Mmcf Per Day**

Atlas Energy, Inc. ("Atlas" or "the Company") reported today that average net production in the Company's Appalachian business unit reached a record 63.3 million cubic feet of natural gas equivalents ("Mmcfe") per day in the third quarter 2010, representing a 53.2% increase year over year and a 15.4% increase from the second quarter 2010. Total Company average net production reached 118.3 Mmcfe per day in the third quarter 2010, up 18.4% over the prior year and 7.7% from the prior quarter. This growth reflects increasingly strong results from the Company's development of its leading Marcellus Shale position in southwestern Pennsylvania.

During the third quarter, Atlas drilled 19 horizontal Marcellus Shale wells. During this period, the company fractured and completed 12 wells, of which 6 wells were turned into line. These results exceeded the Company's budget. The average initial peak rate of production from the 12 horizontal Marcellus Shale wells completed in the quarter was 6.8 Mmcfe per day, and included a well in Westmoreland County that reached a Company-record initial rate of production of 21 Mmcf per day. This well is a step out from existing infrastructure and is not expected to be turned into line until the second quarter of 2011. Four of the other wells, which were completed, but not yet turned into line during the third quarter, will be turned into line during October, while the last well is also waiting on pipeline and will be turned into line in 2011.

Laurel Mountain Midstream continues to make excellent progress in the build out of its new Expansion Gathering System, which is specifically designed for high volume, high pressure Marcellus Shale wells. The first phase of this system is expected to be available to Atlas late in the fourth quarter 2010, while the initial deliveries into the Shamrock station in Fayette County are expected to take place early in the first quarter 2011.

"Our strong operating results and well performance in the third quarter exceeded our earlier estimates and reflect the quality of our acreage, the relatively shallow decline of our wells and the contribution of our new hires and the quality of our senior operating team," stated Richard D. Weber, President of Atlas Energy, Inc.

45. As would be expected with Atlas Energy's record third quarter production, nine analysts have assigned a mean target price of $45.33 per share for Atlas Energy common stock and at least one analyst has assigned a target price of $64.00 per share for Atlas Energy stock (according to Yahoo! Finance).

46. As a result of the Individual Defendants' conduct, Atlas Energy's public stockholders have been and will continue to be denied the fair process and arm's-length negotiated terms to which they are entitled in a sale of their Company. The consideration reflected in the Proposed Acquisition does not reflect the true inherent value of the Company that was known only to the Individual Defendants, as directors and officers of Atlas Energy, and Chevron at the time the Proposed Acquisition was announced. Indeed, the Individual Defendants ensured that Atlas Energy would be sold to one buyer and one buyer only by negotiating a no-solicitation clause that prevents Atlas Energy from soliciting higher offers, matching rights, and the non-mutual termination fee.

### SELF DEALING

47. By reason of their positions with Atlas Energy, the Individual Defendants have access to non-public information concerning the financial condition and prospects of Atlas Energy, and especially the true value and expected increased future value of Atlas Energy and its assets, which they have not disclosed to Atlas Energy's public stockholders. Moreover, despite their duty to maximize shareholder value, the defendants have clear and material conflicts of interest and are acting to better their own interests at the expense of Atlas Energy's public shareholders.

48. Specifically, defendant Weber entered into an agreement with the Company, whereby Weber will provide Atlas Energy with consultation serves for a year after the closing of the Proposed Acquisition in exchange for $2 million in compensation. The Company also entered into an

"Employee Matters Agreement," which provides for certain of the Company's employees to AHD, securing their continued employment.  Additionally, certain of the Individual Defendants are in line to receive generous change of control payouts should they not continue in their prestigious and lucrative positions with the post-Proposed Acquisition company.

49.    The proposed sale is wrongful, unfair, and harmful to Atlas Energy's public stockholders, and represents an effort by defendants to aggrandize their own financial position and interests at the expense of and to the detriment of Class members.  Specifically, defendants are attempting to deny plaintiff and the Class their shareholder rights via the sale of Atlas Energy on terms that do not adequately value the Company and defendants have failed to disclose all material information concerning the Proposed Acquisition and Atlas Energy's current financials. Accordingly, the Proposed Acquisition will only benefit defendants to the detriment of Atlas Energy's public shareholders.

50.    In light of the foregoing, the Individual Defendants must, as their fiduciary obligations require:

- Withdraw their consent to the sale of Atlas Energy and allow the shares to trade freely – without impediments including the no solicitation provision, the matching rights, the termination fee, and the Voting Agreements;

- Act independently so that the interests of Atlas Energy's public stockholders will be protected;

- Adequately ensure that no conflicts of interest exist between defendants' own interests and their fiduciary obligation to maximize stockholder value or, if such conflicts exist, to ensure that all conflicts be resolved in the best interests of Atlas Energy's public stockholders; and

- Solicit competing bids to defendant Chevron's offer to ensure that the Company's shareholders are receiving the maximum value for their shares

## CLASS ALLEGATIONS

51.    Plaintiff brings this action as a class action on behalf of all public stockholders of the Company (except the defendants herein and any person, firm, trust, corporation or other entity

- 18 -

related to, or affiliated with, any of the defendants) and their successors in interest, who are or will be threatened with injury arising from defendants' actions as more fully described herein (the "Class").

52.    This action is properly maintainable as a class action.

53.    The Class is so numerous that joinder of all members is impracticable.  As of August 5, 2010, there were over 78.4 million shares of the Company's common stock outstanding owned by thousands of holders other than defendants.  The Company's common stock is listed and actively traded on the NASDAQ.

54.    There are questions of law and fact which are common to the Class including, inter alia, the following: (a) whether the defendants have breached their fiduciary and other common law duties owed by them to plaintiff and the other members of the Class; (b) whether defendants are pursuing a scheme and course of business designed to eliminate the public stockholders of the Company in violation of their fiduciary duties in order to enrich the Company's directors, the Company's management, and Chevron at the expense and to the detriment of plaintiff and the other public stockholders who are members of the Class; (c) whether the Proposed Acquisition, as described herein, constitutes a breach of the duty of fair dealing with respect to plaintiff and the other members of the Class; (d) whether the Individual Defendants breached their duty to maximize shareholder value in agreeing to the Proposed Acquisition which is designed to result in the sale of Atlas Energy; (e) whether defendants have provided sufficient disclosure of material facts necessary for the public shareholders of Atlas Energy to decide, on a fully-informed basis, whether to vote for the Proposed Acquisition; (f) whether the Class is entitled to injunctive relief as a result of the wrongful conduct committed by defendants; and (g) whether Atlas Energy, Chevron, or Arkhan is aiding and abetting the Individual Defendants breaches of fiduciary duty.

55.     Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature.  The claims of plaintiff are typical of the claims of other members of the Class and plaintiff has the same interests as the other members of the Class.  Plaintiff will fairly and adequately represent the Class.

56.     Defendants have acted in a manner which affects plaintiff and all members of the Class alike, thereby making appropriate injunctive relief and/or corresponding declaratory relief with respect to the Class as a whole.

57.     The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for defendants, or adjudications with respect to individual members of the Class which would, as a practical matter, be dispositive of the interests of other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

**COUNT I**

**Against the Individual Defendants
for Breach of Fiduciary Duties**

58.     Plaintiff incorporates by reference and realleges each and every allegation set forth above.

59.     The Individual Defendants have violated fiduciary duties of care, loyalty, candor, good faith, and independence owed to plaintiff and the other Class members and have acted to put their personal interests ahead of the interests of Atlas Energy's shareholders.

60.     By the acts, transactions, and courses of conduct alleged herein, the Individual Defendants, individually and acting as a part of a common plan, have violated their fiduciary duties by entering into the Proposed Acquisition with Chevron without regard to the fairness of the transaction to Atlas Energy's shareholders.

61.     As demonstrated by the allegations above, the Individual Defendants failed to exercise the care required, and breached their duties of loyalty, good faith, candor, and independence owed to Atlas Energy's shareholders because, among other reasons:

(a)     They failed to conduct a full and fair sales process for Atlas Energy, thereby failing in their duty to properly maximize the value of Atlas Energy's common shares; and

(b)     They ignored or did not protect against the numerous conflicts of interest resulting from their various interrelationships and material insider benefits secured in the Proposed Acquisition.

62.     Because the Individual Defendants dominate and control the business and corporate affairs of Atlas Energy, and are in possession of private corporate information concerning Atlas Energy's assets, business, and future prospects, there exists an imbalance and disparity of knowledge and economic power between them and the public shareholders of Atlas Energy which makes it inherently unfair for them to pursue any proposed transaction wherein they will reap disproportionate benefits to the exclusion of maximizing stockholder value.

63.     By reason of the foregoing acts, practices, and course of conduct, the Individual Defendants have failed to exercise ordinary care and diligence in the exercise of their fiduciary obligations owed to Atlas Energy's shareholders.

64.     The Individual Defendants are engaging in self-dealing, are not acting in good faith, and have breached and are breaching the fiduciary duties owed to Atlas Energy's shareholders.

65.     Unless enjoined by this Court, the Individual Defendants will continue to breach their fiduciary duties owed to the plaintiff and the other members of the Class, and may consummate the Proposed Acquisition without providing the Company's shareholders a full and fair sales process.

66.     As a result of the Individual Defendants' actions, plaintiff and the Class members have been and will be irreparably harmed.

67. Plaintiff and the other Class member have no adequate remedy at law.

## COUNT II

### Against Defendant Atlas Energy for Aiding and Abetting Breaches of Fiduciary Duties

68. Plaintiff incorporates by reference and realleges each and every allegation set forth above.

69. Defendant Atlas Energy aided and abetted the Individual Defendants in breaching their fiduciary duties owed to the public shareholders of Atlas Energy, including plaintiff and the members of the Class.

70. The Individual Defendants owed to plaintiff and the members of the Class certain fiduciary duties as more fully set forth above.

71. By committing the acts alleged herein, the Individual Defendants breached their fiduciary duties owed to plaintiff and the members of the Class.

72. Defendant Atlas Energy colluded in or aided and abetted the Individual Defendants' breaches of fiduciary duties, and was an active and knowing participant in the Individual Defendants' breaches of fiduciary duties owed to plaintiff and the members of the Class.

73. Plaintiff and the other members of the Class have no adequate remedy at law.

## COUNT III

### Against Defendants Chevron and Arkhan for Aiding and Abetting Breaches of Fiduciary Duties

74. Plaintiff incorporates by reference and realleges each and every allegation set forth above.

75. Defendants Chevron and Arkhan aided and abetted the Individual Defendants in breaching their fiduciary duties owed to the public shareholders of Atlas Energy, including plaintiff and the members of the Class.

76.    The Individual Defendants owed to plaintiff and the members of the Class certain fiduciary duties as more fully set forth above.

77.    By committing the acts alleged herein, the Individual Defendants breached their fiduciary duties owed to plaintiff and the members of the Class.

78.    Defendants Chevron and Arkhan colluded in or aided and abetted the Individual Defendants' breaches of fiduciary duties, and was an active and knowing participant in the Individual Defendants' breaches of fiduciary duties owed to plaintiff and the members of the Class.

79.    Plaintiff and the other members of the Class have no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff demands judgment and preliminary and permanent relief, in favor of plaintiff and the Class against defendants, as follows:

A.    Declaring that this action is properly maintainable as a class action;

B.    Declaring and decreeing that the Proposed Acquisition was entered into in breach of the fiduciary duties owed by the defendants to the Company's shareholders and is therefore unlawful and unenforceable;

C.    Enjoining the defendants, their agents, counsel, employees, and all persons acting in concert with them from consummating the Proposed Acquisition, unless and until the Board adopts and implements a fair sales process;

D.    Directing the defendants to exercise their fiduciary duties to obtain a transaction that is in the best interests of plaintiff and the Class and to refrain from insisting on improper barriers to superior bids or entering into any transaction until a fair process is used to sell the Company;

E.    Rescinding, to the extent already implemented, the Proposed Acquisition or any of the terms thereof;

F.      Awarding plaintiff the costs and disbursements of this action, including reasonable attorneys' and experts' fees; and

G.      Granting such other and further equitable relief as this Court may deem just and proper.

DATED:  November 15, 2010          LAW OFFICES OF ALFRED G. YATES, JR., P.C.


                                   _____s/ Alfred G. Yates, Jr._____
                                   Alfred G. Yates, Jr. (PA17419)
                                   Gerald L. Rutledge (PA62027)
                                   519 Atlas Building
                                   429 Forbes Avenue
                                   Pittsburgh, PA  15219
                                   Telephone:  412/391-5164
                                   412/471-1033 (fax)
                                   yateslaw@aol.com

                                   ROBBINS UMEDA LLP
                                   MARC M. UMEDA
                                   STEPHEN J. ODDO
                                   ARSHAN AMIRI
                                   600 B Street, Suite 1900
                                   San Diego, CA 92101
                                   Telephone: (619) 525-3990
                                   Facsimile:  (619) 525-3991
                                   mumeda@robbinsumeda.com
                                   soddo@robbinsumeda.com
                                   aamiri@robbinsumeda.com

                                   KENDALL LAW GROUP, LLP
                                   JOE KENDALL
                                   JAMIE J. MCKEY
                                   3232 McKinney, Suite 700
                                   Dallas, TX  75204
                                   Telephone: (214) 744-3000
                                   Facsimile:  (214) 744-3015
                                   jkendall@kendalllawgroup.com
                                   jmckeyl@kendalllawgroup.com

                                   Attorneys for Plaintiff